```
                      UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
ROBERT DICKSON,                    :
                                   :CIVIL ACTION NO. 3:17-CV-1586
         Plaintiff,                :
                                   :(JUDGE CONABOY)
         v.                        :
                                   :
NANCY A. BERRYHILL,                :
Acting Commissioner of             :
Social Security,                   :
                                   :
         Defendant.                :
                                   :
```

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). (Doc. 1.) Plaintiff protectively filed an application on October 2, 2014, alleging disability beginning on April 22, 2010. (R. 10.) After Plaintiff appealed the initial January 12, 2015, denial of the claim, a hearing was held by Administrative Law Judge ("ALJ") Daniel Balutis on October 20, 2016. (*Id.*) ALJ Balutis issued his Decision on November 7, 2016, concluding that Plaintiff had not been under a disability, as defined in the Social Security Act ("Act") through December 31, 2015, the date last insured. (R. 22.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on July 6, 2017. (R. 1-6.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on September 6, 2017. (Doc. 1.) He asserts in his supporting brief that the Acting Commissioner's

determination is error for the following reasons: 1) substantial evidence does not support the ALJ's decision that Plaintiff was capable of sustained gainful employment; 2) the ALJ substituted his own medical conclusions in that he failed to give proper weight to the objective evidence and treating providers' opinions; and 3) the ALJ did not adequately explain or document his findings that the Plaintiff's testimony and that of his wife were not fully credible. (Doc. 11 at 5.) For the reasons discussed below, the Court concludes Plaintiff's appeal is properly denied.

## I. Background

Plaintiff was born on November 24, 1965. (R. 21.) He has a high school education and past relevant work as a clamp truck driver, truck loader/unloader, and delivery route driver. (*Id.*) Plaintiff alleged that his inability to work was limited by lower back, herniated disc, pinched nerve, nerve damage, anxiety, and panic attacks. (R. 198.)

In his supporting brief (Doc. 11), Plaintiff does not provide a factual background with citation to medical evidence of record. Rather, he references testimony presented at the ALJ hearing by Plaintiff and his wife. (Doc. 11 at 2-4.) Thus, the Court will provide a brief general background of the case and review relevant evidence of record in the context of the arguments presented.

Plaintiff testified that he last worked on April 10, 2010. (R. 70.) He was hurt on the job when he bent down and rolled up a

2

rug. (R. 70-71.) Plaintiff filed a workers' compensation claim and eventually settled the case. (R. 70.) He generally references "objective evidence of the presence of pain generators in Plaintiff's lumbar, cervical and brain" (Doc. 11 at 3), and points specifically to a disc herniation of the lumbar spine at L4-5, disc herniations at C5-6 and C6-7 that led to cervical fusion surgery on November 11, 2015, and the diagnosis of brain aneurysms in July 2015. (*Id.*) ALJ Balutis summarized Plaintiff's claims as follows:

> The claimant relates problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, using his hands and climbing stairs. He has sharp pain in his left leg, back, left arm and shoulder. The pain increases when he bends, sits or stands for long periods of time. He can only lift about five pounds. He is able to walk fifty yards but then needs to rest for a couple minutes. The claimant's medication makes him tired. The claimant tried using a brace and attended physical therapy. However, neither treatment modality was effective in reducing his pain level. During the day, the claimant prepares simple meals, occasionally helps with the laundry, and goes outside every day. He is able to drive a car. He shops in the store a couple of times a week for small items. The claimant watches sports but can no longer participate in playing sports or volunteer as a fire fighter. (Exhibit 3E)
>
> At the hearing, the claimant testified he had an on the job accident and injured the left side of his body, including his fingers, arm, hip and leg. He states his pain is 8/10 on the scale but medication reduces it to 6/10. After surgery, the claimant said he could walk about fifty feet or five to ten minutes before he developed an increase in pain forcing him to sit and rest for ten to

3

> fifteen minutes. After standing five minutes
> he would develop numbness and need to sit and
> rest. He could sit for ten minutes and then
> would need to change his position for ten to
> fifteen minutes. The claimant ambulates with
> a cane. He could lift five pounds but ten
> pounds would cause burning in his shoulder
> leg and arm. He is right hand dominant but
> has difficultly using his left hand. While
> he is able to grab objects like a pencil and
> pen, he cannot hold a coffee cup. In
> addition, he cannot pinch or turn a doorknob.
> The claimant said that in December 2015 he
> could bend, stoop and squat. He could climb
> one flight of stairs but he would have pain
> down his left side, especially in his hips.
>
> As for his aneurysm, the claimant said he can
> read ten minutes but then gets dizzy and
> lightheaded. He watches a couple of hours of
> television per day. The claimant said that
> in 2015 he was attending church twice a year.
> He got about three to four hours of sleep.
> He took half an hour naps. The claimant
> requested a cane because he had fallen.
> (Testimony)

(R. 16.)

In his November 2017 Decision, ALJ Balutis determined that, through the date last insured, Plaintiff had the following severe impairments: chronic L5 radiculopathy; C5-C6, C6-C7 disc herniation status post anterior discectomy with fusion and plating at C5 through C7; unruptured left middle cerebral artery aneurysm; status post left fronto-temporal craniotomy, round right ICA bifurcation aneurysm; and bilateral osteoarthritis of the knees. (R. 12.) The ALJ concluded that additional impairments in the record were non-severe including panic disorder and generalized anxiety disorder. (*Id.*) He concluded that Plaintiff did not have an impairment or

4

combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 14.) ALJ Balutis found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work

> except the claimant should be afforded the option to alternate to stand for five minutes after thirty minutes of sitting and sit for five minutes after thirty minutes of standing or walking. He could frequently reach overhead bilaterally and in all other directions, and frequently finger and feel with his left, non-dominant hand. The claimant could occasionally climb ramps and stairs, balance, kneel, stoop, and crouch. He should never crawl or climb ladders, ropes and scaffolds. The claimant is limited to reading ordinary newspaper or book print. He should avoid exposure to unprotected heights or moving, mechanical parts.

(R. 15.) With this RFC, ALJ Balutis concluded that Plaintiff could not perform his past relevant work but jobs existed in significant numbers in the national economy which he could perform. (R. 20-21.) On this basis, he determined Plaintiff had not been under a disability as defined in the Act from April 22, 2010, through December 31, 2015, the date last insured. (R. 22.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1] It is necessary for the

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C.

5

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the

---

§ 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

6

fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform.  (R. 21.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a

> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel
> non* of substantial evidence is *not* merely a
> quantitative exercise. A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence. Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion. *See* [*Cotter*, 642 F.2d] at 706
> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted). The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent

8

that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## **IV. Discussion**

As set out above, Plaintiff asserts the Acting Commissioner's determination is error for the following reasons: 1) substantial evidence does not support the ALJ's decision that Plaintiff was capable of sustained gainful employment; 2) the ALJ substituted his own medical conclusions in that he failed to give proper weight to the objective evidence and treating providers' opinions; and 3) the ALJ did not adequately explain or document his findings that the Plaintiff's testimony and that of his wife were not fully credible. (Doc. 11 at 5.)

### *A. Residual Functional Capacity*

Plaintiff maintains the ALJ erred in determining that Plaintiff had the RFC to perform a full range of light duty work, specifically pointing to his reaching difficulties, his use of a cane, and difficulties experienced as a result of aneurysms. (Doc. 11 at 6-8.) Defendant responds that the ALJ's assessment for a reduced range of light duty work captured Plaintiff's physical limitations. (Doc. 12 at 17.) For the reasons discussed below, the Court concludes Plaintiff has not satisfied his burden of showing that the claimed error is cause for reversal or remand.

In a Social Security appeal, the plaintiff bears the burden of showing that a claimed ALJ error was harmful. "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shineski v, Sanders*, 556

U.S. 396, 409 (1969); *Woodson v. Comm'r of Social Security*, 661 F. App'x 762, 766 (3d Cir. 2016) (citing *Shineski*, 556 U.S. at 409) (a plaintiff must point to specific evidence that demonstrates his claimed error caused harm); *Holloman v. Comm'r of Social Security*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shineski*, 556 U.S. At 409) (a plaintiff must show how the claimed error made a difference beyond a mere assertion that it did so).

Regarding reaching limitations, Plaintiff acknowledges that the ALJ included the "ability to frequently reach with his arms overhead bilaterally and in all other directions" but states that the ALJ "fails to place reaching limitations of the upper extremities." (Doc. 11 at 6.) Limiting Plaintiff to "frequent" lifting is a limitation set out in the RFC (R. 15) which the ALJ specifically explained (R. 18). Plaintiff conclusorily states that his cervical discectomy in November 2015 and symptomatology which led to the surgery (arm pain and numbness down to the hand) would prevent him from performing the light duty position as described in the RFC. (Doc. 11 at 6-7.) This type of broad assertion cannot satisfy Plaintiff's burden of showing error. *Shineski*, 556 U.S. at 409; *Woodson*, 661 F. App'x at 766; *Holloman*, 639 F. App'x at 814. More specifically, Plaintiff does not show how functional limitations related to his neck impairment which had lasted or were expected to last twelve months prevented him from frequently reaching overhead bilaterally and in all directions. 42 U.S.C. §

423(d)(1)(A). Importantly, the surgery and pre-surgery symptoms referenced in Plaintiff's brief do not suffice in that the mere fact of a surgery and identification of symptoms preceding it do not establish functional limitations meeting the durational requirement.[2] *See*, *e.g.*, *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006) (not precedential).

    Plaintiff's reference to the use of a cane is also unavailing because he does not address the ALJ's determination that the record did not support Plaintiff's allegations that he needed a cane. (*See* Doc. 11 at 6.) Although ALJ Balutis acknowledged that Plaintiff's doctor had prescribed a cane after Plaintiff requested it in October 2015 (R. 67), he cited specific reasons why he concluded the record did not support Plaintiff's ambulation allegations: records show that Plaintiff ambulated unassisted and had a normal gait in December 2014 (R. 385); and he had a normal gait and independent mobility in January 2016 (R. 612). (R. 18.) Further, in responding to Plaintiff's assertion, Defendant pointed to the evidence postdating Plaintiff's cane request and Plaintiff did not file a reply brief refuting the argument. For all of these reasons, Plaintiff has not satisfied his burden of showing harmful

---

    [2] In a surgical post-operative visit on January 13, 2016, Plaintiff reported that his left arm pain had resolved since surgery but he still had some numbness in his left fourth and fifth fingers and intermittent poking sensation in his first and third fingertips. (R. 612.) At the office visit, Plaintiff reported "soreness" between shoulder blades, left greater than right, which was worse in the morning and just before going to sleep. (*Id.*)

12

error related to his use of a cane.

Plaintiff's contention that the ALJ did not give sufficient weight to the difficulties he experienced as a result of the aneurysm is deficient for similar reasons. Without citation to the record, Plaintiff makes conclusory assertions and states that the ALJ cited to a pre-surgery "failed diagnosis of myopia" and ignores evidence subsequent to his date last insured "which would obviously support the Plaintiff's difficulties with vision due to brain aneurysms." (Doc. 11 at 8.) Plaintiff also states "[a]ccording to the Vocational Expert, his vision difficulties would have taken him off task while changes [sic] position between sitting and standing (RR 132). The light duty jobs identified and relied upon by the ALJ would not be available." (Doc. 11 at 8.)

Contrary to Plaintiff's allegation, ALJ Balutis specifically considered evidence postdating the date last insured, including surgeries for the clipping of aneurysms, noting that the record contains no evidence of cognitive symptoms as a result of the aneurysms but Plaintiff did have visual limitations for which the RFC accounted. (R. 19.) Plaintiff also mischaracterizes the record with the single citation found in the one-paragraph argument supporting aneurysm-related difficulties. (Doc. 11 at 8 (citing R. 132).) The record shows the VE made the statement cited in response to Plaintiff's attorney's question of whether the hypothetical individual who "would not be able to see at a distance

13

from a sitting position or a standing position to a tabletop, and would have to place objects close to his face in order to read" would be unable to perform the light duty jobs previously identified. (R. 131.) Thus, when viewed in context, the VE did not opine that *Plaintiff's* established vision difficulties would render him unable to perform the jobs identified. Although Plaintiff testified that toward the end of 2015 he was able to read but he would have to bring the material within a few inches of his face (R. 102), he points to no medical evidence verifying the limitation and no evidence establishing the required longitudinal reading difficulty alleged. Because the ALJ is obligated to include only credibly established limitations in the RFC, *Rutherford*, 399 F.3d at 554, and Plaintiff does not adequately develop his argument that the ALJ erred on the basis alleged, Plaintiff has not satisfied his burden of showing that the claimed error is cause for reversal or remand.[3]

### B. *Medical Opinion Evidence*

Plaintiff points to several alleged inadequacies in support of his assertion that the ALJ erred in his treatment of medical opinions and office records. (Doc. 11 at 8-10.) Defendant

---

[3] Plaintiff's reference to the grid rules which would apply at a sedentary level at age 50 (Doc. 11 at 7) requires no discussion because it is merely a statement which is not relevant to his case. In that Defendant pointed out that the statement was without merit (Doc. 12 at 18) and Plaintiff did not reply, no further consideration of the issue is warranted.

14

responds that the ALJ gave appropriate weight to opinion evidence. (Doc. 12 at 20.) For the reasons discussed below, the Court concludes Plaintiff has not satisfied his burden of showing that the claimed error is cause for reversal or remand.

First, Plaintiff notes the opinions of PA-C's Kaitlen Jones, Joseph Andel, Jessica Doornbos, and Alan Russell Vannan were treated as non-medical sources. (Doc. 11 at 9.) It is true that ALJ Balutis stated that these individuals were "treating non-medical sources." (R. 19.) However, this statement does not indicate error: for claims filed prior to March 27, 2017, PA-Cs were not included in the definition of "acceptable medical source"; for claims filed on or after March 27, 2017, the definition of "acceptable medical source" included a "Licensed Physician Assistant for impairments within his or her licensed scope of practice." 20 C.F.R. § 404.1502(a)(8). Nonetheless, before the definitional change, opinions from "medical sources who are not technically deemed 'acceptable medical sources' . . . are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939, at *3. Here, ALJ Balutis specifically stated that he considered the opinions of the physicians' assistants. (R. 19.) He did not give them little weight because of the status of the providers but for substantive reasons. (R. 20.) Therefore, Plaintiff's inference that the opinions were not properly considered because of the

15

status of the providers (Doc. 11 at 8-9) is without merit.

Plaintiff also takes issue with ALJ Balutis's substantive reason for assigning the opinions little weight. (Doc. 11 at 9.) ALJ Balutis recognized the functional limitations found in office records from post-operative visits but gave the limitations little weight "because they were issued in the context of the claimant's recovery from surgery and not intended to be permanent restrictions. Thus, they contribute little to the longer, twelve-month period the Social Security regulations require we contemplate in evaluating disability." (R. 20.) Plaintiff states "[t]his is inconsistent in light of the duration of medical treatment and the credibility of the Plaintiff's testimony and the testimony of his wife. The Plaintiff's complaints are supported by the majority of the office records since he stopped working in 2010." (Doc. 11 at 9.)

Plaintiff does not dispute that the limitations set out by the PA-Cs were indicated in post-operative visits. (*See* R. 596, 658, 668.) The contextual significance is apparent in the notes themselves in that some limitations include planned incremental increases in the activity and other activities may be engaged in "as tolerated." (*Id.*) In each instance, follow-up was planned and no long-term limitations were suggested. (*Id.*) Further, Plaintiff's averred inconsistencies are not accompanied by a single citation to the record. As noted above, this type of broad-brush

argument is inadequate. *Shineski*, 556 U.S. at 409; *Woodson*, 661 F. App'x at 766; *Holloman*, 639 F. App'x at 814.

Plaintiff next references the field of specialization of consulting examiner Jay Wilner, M.D., noting that he is a gynecologist and not a physician who practices in the filed of physical or orthopedic medicine. (Doc. 11 at 9.) This statement points to no specific error based on Dr. Wilner's medical specialty or his assessment of Plaintiff's functional limitations. Therefore, Plaintiff presents no basis for the Court to find related error.

Plaintiff also points to Dr. Jolly Ombao's finding in February 2016 that Plaintiff's gait was intact and he could stand and heel and toe walk, stating that the finding cannot support the ALJ's light duty functional capacities evaluation prior to his date last insured. (Doc. 11 at 9.) Plaintiff adds "[i]t is also critical that the ALJ would not consider the Plaintiff's aneurysm surgeries subsequent to the date last insured but will take into account computer generated findings from a pain doctor who is treating a cervical condition after his date of last insured (12/31/15)." (*Id*. at 9-10.) The Court's review of the ALJ's explanation of his RFC assessment shows that his decision was based on a thorough review of the evidence which included evidence postdating the date last insured--2016 records related to both pain management and Plaintiff's anuerysms were specifically reviewed. (R. 16-21.) The

17

ALJ appropriately stressed the twelve-month evaluation period required under the Social Security Act and regulations. (R. 20.) As noted above, disability under the Act is not based on a diagnosis, the mere fact of a surgery, or identification of symptoms preceding it--disability is established by showing functional limitations which meet the durational requirement. *See*, *e.g.*, *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006) (not precedential). Thus, aneurysm *surgeries* themselves do not support functional limitations, but, to the extent the pain doctor's *findings* relate to *functional limitations* in the context of the longitudinal requirements of the Act, they are properly considered.

## *C. Credibility*

Plaintiff contends the ALJ erred because he did not adequately explain or properly document his findings that Plaintiff's and his wife's testimony were not fully credible. (Doc. 11 at 5.) Defendant maintains the ALJ reasonably assessed Plaintiff's credibility. (Doc. 12 at 22.) The Court concludes Plaintiff has not satisfied his burden of showing that the claimed error is cause for reversal or remand.

ALJ Balutis found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record. (R. 16.) In his analysis, the ALJ cited specific examples of inconsistencies and explained how his RFC

18

accounted for credibly established limitations. (*See*, *e.g.*, R. 18.)

In support of his credibility argument, Plaintiff does not refute specific ALJ findings but first points to his twenty-six year work history and his failure to return to work as evidence of his credibility. (Doc. 11 at 10.) Citing to *Dobrowolsky*, 606 F.2d at 409, Plaintiff notes that Mr. Dobrowolsky had twenty-nine years of continuous work and was found to be entitled to substantial credibility. (*Id.*) As stated in *Maher v. Astrue*, Civ. A. No. 08-156J, 2009 WL 3152467 (W.D. Pa. Sept. 30, 2009):

> Plaintiff is correct that the testimony of a claimant with a long, productive work history will be given substantial credibility concerning his work-related limitations, assuming those limitations also are supported by competent medical evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). And although a claimant's work history is one of many factors the ALJ is to consider in assessing an individual's subjective complaints, 20 C.F.R. § 404.1529(c)(3), the ALJ is not required to equate a long work history with credibility. *See Christi v. Astrue*, 2008 WL 4425817, at *12 (W.D. Pa. Sept. 30, 2008). Thus, a claimant's work history alone is not dispositive of the issue of credibility.

2009 WL 3152467, at *3; *see also Corley v. Barnhart*, 102 F. App'x 752, 755 (3d Cir. 2004). Although Plaintiff states that "[a]rguably, [his] testimony of his difficulties standing, walking, sitting were given little credibility in light of the ALJ's finding that he was capable of light duty work" (Doc. 11 at 10), he does

19

not point to "competent medical evidence," contradicting the ALJ's assessment of his standing, walking, and sitting difficulties as required by *Dobrowolsky*, 606 F.2d at 409, and relevant regulations.

Finally, with his statement of errors Plaintiff generally avers that the ALJ did not properly explain or document his findings regarding Plaintiff's wife's testimony. (Doc. 11 at 5.) However, Plaintiff does not discuss this aspect of his claimed error in the related Argument section of his brief. (*Id.* at 10.) In addition to the inadequate development of the claimed error, the Court finds the assertion without merit in that ALJ Balutis reviewed Ms. Dickson's statements and October 2016 hearing testimony and noted that she testified she "was unable to recall exactly how limited the claimant was prior to his date last insured and indicated his condition had become worse more recently." (R. 20.) Thus, the Court finds Plaintiff has not shown that the claimed error is cause for reversal or remand.

## **V. Conclusion**

For the reasons discussed above, the Court concludes Plaintiff's appeal of the Acting Commissioner's decision is properly denied. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy  
RICHARD P. CONABOY  
United States District Judge

DATED: June 1, 2018

20